RAPHAEL J.C. GRAYBILL
Special Assistant Attorney General
Chief Legal Counsel
Office of the Governor
PO Box 200801
Helena, MT 59620-0801
T: (406) 444-3179
Raphael.Graybill@mt.gov

CHRISTOPHER D. ABBOTT
Assistant Attorney General
Agency Legal Services Bureau
P.O. Box 201440
Helena, MT 59620-1440
T: (406) 444-2026
F: (406) 444-4303
Christopher.Abbott@mt.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ILLINOIS OPPORTUNITY PROJECT, <br><br> Plaintiff, <br><br> v. <br><br> STEVE BULLOCK, in his official capacity as governor of Montana, and MEGHAN HOLMLUND, in her official capacity as chief of the State Procurement Bureau, <br><br> Defendants. | Case No. CV 19-00056-H-CCL <br><br><br> **BRIEF IN SUPPORT OF DEFENDANTS' COMBINED RULE 12 MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

APPLICABLE LEGAL STANDARD .................................................................... 6

ARGUMENT .......................................................................................................... 7

   I. Illinois Opportunity Project has not alleged an actual or imminent injury in fact. ................................................................................................................ 7

      A. The Executive Order's disclosure requirement applies only to bidders on state contracts, not organizations engaging in electioneering communications. ................................................................................. 8

      B. The claim that current or potential donors may wish to bid on substantial Montana state government contracts is too speculative to establish an actual or imminent injury. ................................................. 9

   II. Illinois Opportunity Project's claim is an attempt to enforce the rights of others who are better situated to litigate on their own behalf. ...................... 14

      A. Illinois Opportunity Project lacks the same intensity of motivation to challenge the Executive Order as would a prospective state contractor. ............................................................................................................. 15

      B. There is no hindrance preventing prospective state contractors desiring to make political contributions from bringing their own action. ........... 17

CONCLUSION ...................................................................................................... 17

CERTIFICATE OF COMPLIANCE ..................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ..........................................................................8, 10

*Barnum Timber Co. v. United States Envtl. Prot. Agency*,
  633 F.3d 894 (9th Cir. 2011) .....................................................................6

*Citizens United v. Federal Election Comm'n*,
  558 U.S. 310 (2010) ...................................................................................2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................10

*Flast v. Cohen*,
  392 U.S. 83 (1968) .....................................................................................1

*Fleck & Assocs. v. City of Phoenix*,
  471 F.3d 1100 (9th Cir. 2006) .................................................................14

*Get Outdoors II, LLC v. City of San Diego*,
  506 F.3d 886 (9th Cir. 2007) ...................................................................8, 9

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ........................................................................... 14, 16

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ............................................................ 7, 8, 9, 10

*Lord v. Vezie*,
  49 U.S. (8 How.) 251 (1850) .....................................................................1

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 6, 7, 10

*McCollum v. Cal. Dep't of Corr. & Rehab.*,
  647 F.3d 870 (9th Cir. 2010) ...................................................................16

*Microsoft Corp. v. United States Dep't of Justice*,
  233 F. Supp. 3d 887 (W.D. Wash. 2017).............................................6

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015)........................................................10

*NAACP v. Alabama*,
  357 U.S. 449 (1958) ....................................................................17

*Nat'l Ass'n for Gun Rights, Inc. v. Mangan*,
  933 F.3d 1102 (9th Cir. 2019)........................................................2

*National Taxpayers Union v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) ......................................................12

*Nelsen v. King County*,
  895 F.2d 1248 (9th Cir. 1990).......................................................10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ....................................................................14

*ProtectMarriage.com – Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014)........................................................12

*RK Ventures, Inc. v. City of Seattle*,
  307 F.3d 1045 (9th Cir. 2002).................................................. 15, 16

*Spokeo, Inc. v. Robins*,
  __ U.S. __, 136 S. Ct. 1540 (2016)................................................2

*Steel Co. v. Citizens for Better Environment*,
  523 U.S. 83 (1998) .......................................................................2

*United States v. Holm*,
  326 F.3d 872 (7th Cir. 2003).........................................................14

*Washington v. Fresno County Sheriff*,
  1:15-cv-00854-LJO-GSA, 2015 U.S. Dist. LEXIS 82181
  (E.D. Cal. June 24, 2015) .............................................................15

*Wauchope v. United States Dep't of State*,
    985 F.2d 1407 (9th Cir. 1993)..............................................................15

*Yamada v. Snipes*,
    786 F.3d 1182 (9th Cir. 2015)................................................................3

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018)................................................................12

**Statutes**

Mont. Code Ann. § 18-4-121, *et seq.*.......................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................6
Fed. R. Civ. P. 12(b)(6)............................................................................6

**Other Authorities**

C. Wright, Federal Courts 34 (1963) .......................................................1
Executive Order 15-2018 .......................................................... 3, 4, 5, 9

## **INTRODUCTION**

Federal courts do not issue advisory opinions. *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[I]t is quite clear that the 'the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" (quoting C. Wright, Federal Courts 34 (1963)); *Lord v. Vezie*, 49 U.S. (8 How.) 251, 255 (1850) (disapproving "any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties"). That, however, is precisely what this action asks this Court to do.

Plaintiff Illinois Opportunity Project is an Illinois-based, Illinois-centric advocacy organization. It nevertheless wants to insert itself into Montana's affairs by challenging a Montana executive order requiring bidders on large-dollar Montana state government contracts to disclose any substantial political contributions they have made. Illinois Opportunity Project does not disclose that it has received contributions from any such sources, but hypothesizes that it *may* try to fundraise from corporations that bid on large public contracts in Montana. Illinois Opportunity Project further speculates these putative contributors could be subjected to reprisals for their potential contributions. It is on this basis that Illinois Opportunity Project asks this Court to intercede on its hypothetical donors'

behalf—donors who are not identified, may not exist, and are not a party to this case.

This lawsuit should be dismissed for lack of standing. First, Illinois Opportunity Project simply does not allege an "injury in fact, the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). Second, Illinois Opportunity Project attempts to assert the rights of third parties—its conjectural donors, the only entities subject to the order. Either defect independently deprives this Court of authority to grant relief.

This motion is no concession of the merits. To the contrary, the Supreme Court has repeatedly embraced disclosure as a pillar of the American system of campaign finance. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 370 (2010) (rejecting argument that "disclosure requirements can chill donations to an organization by exposing donors to retaliation" because plaintiffs "offered no evidence" of "threats or reprisals"). Just two months ago, the Ninth Circuit upheld disclosure requirements in Montana virtually identical to the executive order at issue here. *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102 (9th Cir. 2019). And a bevy of cases have upheld regulation on political contributions by prospective state contractors more onerous than what is presented here. *E.g. Yamada v. Snipes*, 786 F.3d 1182, 1204-1205 (9th Cir. 2015) (upholding complete

ban on political contributions by state contractors). But as much as Illinois Opportunity Project would like the Court to revisit these precedents, its proposed vehicle—this suit—does not present a case or controversy. Instead, it is a request that this Court issue an advisory opinion on the rights of third parties that may or may not exist. This suit is meritless and should be dismissed.

## BACKGROUND

State procurement of goods and services is a function of the executive branch in Montana. Mont. Code Ann. § 18-4-121, *et seq*. In June 2018, Montana Governor Steve Bullock issued Executive Order 15-2018 ("Executive Order"). (Doc. 1 ¶ 11.) The Executive Order directs state agencies and departments within the Governor's executive authority to require entities making offers or bids for substantial government contracts to disclose certain political contributions as a condition of submitting the bid or offer. (Doc. 1-2 § III.1.) Observing that "the government of Montana purchases millions of dollars in services each year with public dollars," the Executive Order states that, previous to its existence, there were comparatively few "pay-to-play restrictions for entities seeking to do business with state government." (*Id.* at 2.) Thus, the Executive Order's express purpose is to "secure Montanans' right to know," "prevent corruption, promote confidence in government, and inform the public of the operations of government," and "ensure the integrity of its institutions." (*Id.*)

The Executive Order's scope is constrained in several significant ways. First, unlike a campaign finance regulation or statute, the Executive Order does not apply to the organizations engaging in electioneering activities themselves. Rather, it imposes an obligation only on those who voluntarily seek to do business with the State by submitting offers or bids for large-dollar state government contracts. (*Id.* § III.1.) The Executive Order applies only if the offer or bid is for a contract worth more than $25,000 for services or $50,000 for goods. (*Id.* § III.1.)

Second, the prospective contractor need only disclose contributions if they exceeded an aggregate of $2,500 in the preceding two years. (*Id.* § III.2.) The disclosure obligation exists only at the time of bidding and, for contracts lasting longer than 24 months, an annual update; the disclosure obligation does not extend beyond the contract's duration. (*See id.* §§ III.4–5.)

Finally, contributions are disclosed only if the recipient is a candidate, political party, or party committee, or the recipient makes "electioneering communications" in Montana or directly contributes to another entity who does. (*Id.* § II.2.a.) Electioneering communications are confined to communications made within 60 days of the initiation of voting in Montana that "can be received by more than 100 recipients" and that refer to a candidate for office in that election, depict a candidate for office in that election, or refer to a party, ballot issue, or other measure submitted to the voters for that election, and do not fall into any of

the various exceptions set forth in the Order.  (*Id.* § II.1.)  It does not include expenditures and investments made by the prospective contractor in the ordinary course of business, and the prospective contractor can avoid triggering the disclosure requirement by reaching agreement with the recipient that the recipient will not use the contribution to give to candidates or parties or make electioneering communications in a Montana election.  (*Id.* § II.2.b.)

Illinois Opportunity Project, a 501(c)(4) nonprofit based in Chicago, Illinois, is the plaintiff bringing this action.  (Doc. 1 ¶6.)  It states that its mission is to "educat[e] the public about policy that is driven by the principles of liberty and free enterprise."  (*Id.*)  Its activities are "primarily focused on Illinois," but it "occasionally" engages in issue advocacy elsewhere that could have "ripple effects" on policies of interest in Illinois.  (*Id.*)  Illinois Opportunity Project professes its intention to send mailings to Montanans close to the 2020 general election urging gubernatorial candidates not to continue the Executive Order and to engage in "substantially similar speech" in future elections.  (*Id.* ¶18.)  It states that it "desires" to solicit financial support from donors within Montana and that its current or future donors "*may* now or in the future wish to bid on business from Montana state government."  (*Id.* ¶20 (emphasis added).)  Citing concern that current or future donors could be subject to the Executive Order, Illinois Opportunity Project claims that it will not engage in its planned communications

while the Executive Order is in effect.  (*Id.* ¶¶23-24.)  Illinois Opportunity Project claims that it will not do so because of its professed worry that such donors *might* face negative reprisals due to disclosure of their contributions.  (*Id.* § 22.)

## APPLICABLE LEGAL STANDARD

The absence of subject-matter jurisdiction because the plaintiff lacks standing under Article III of the Constitution may be challenged at any time under Fed. R. Civ. P. 12(b)(1).  *Pepper v. Apple, Inc.*, 846 F.3d 313, 319 (9th Cir. 2017).  A challenge to standing on prudential grounds—for instance, because the plaintiff seeks to enforce the rights of third parties—may be raised under Fed. R. Civ. P. 12(b)(6).  *Microsoft Corp. v. United States Dep't of Justice*, 233 F. Supp. 3d 887, 908 n.8 (W.D. Wash. 2017).  Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."  *Barnum Timber Co. v. United States Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Thus, at this stage, Illinois Opportunity Project must allege sufficient facts, accepted as true, to plausibly establish its standing to sue.  *See Barnum Timber Co.*, 633 F.3d at 899.

## ARGUMENT

This Court need not inquire into the merits of the Complaint because Illinois Opportunity Project lacks standing to challenge the Executive Order. There is no case and controversy because Illinois Opportunity Project's speculation that a current or future donor *may* wish to bid on a Montana state contract is too hypothetical to establish an injury in fact. And even if such donors existed, Illinois Opportunity Project cannot assert their rights for them when they are better situated to litigate on their own behalf.

**I.      Illinois Opportunity Project has not alleged an actual or imminent injury in fact.**

As the party invoking the Court's jurisdiction, Illinois Opportunity Project must first establish "'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff[']s alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560-61 (1992)).

Of the three elements of constitutional standing, most relevant here is the required demonstration of an injury in fact. Such an injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. In all instances, even so-called "pre-enforcement" cases where a plaintiff mounting a First Amendment challenge may sometimes bring suit without having yet suffered a direct injury, the injury-in-fact requirement means

the plaintiff must demonstrate an "actual or imminent injury to a legally protected interest." *Lopez*, 630 F.3d at 785. Thus, in pre-enforcement cases, the plaintiff must plead facts sufficient to establish "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Illinois Opportunity Project has not alleged an injury in fact. The Executive Order does not apply to an advocacy group like Illinois Opportunity Project; rather, it applies only to bidders on state contracts. And Illinois Opportunity Project cannot establish an injury based on an effect on its current or future donors because it has not alleged facts establishing a substantial risk that any of its current or prospective donors will ever be affected by the Executive Order.

### A. The Executive Order's disclosure requirement applies only to bidders on state contracts, not organizations engaging in electioneering communications.

Illinois Opportunity Project asserts its concern for the harm it claims the Executive Order will cause its donors. (Doc. 1 ¶ 22.) It cannot, however, bring suit solely to avert injury to its donors; rather, it can only bring claims that would redress some credible risk of injury to its own interests. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007). Thus, Illinois Opportunity Project's professed concerns about "personal and economic repercussions" to its supporters (Doc. 1 ¶ 22) or their purported lost ability to bid on state contracts (*id.*

¶ 23) do not establish standing except insofar as those considerations might plausibly harm Illinois Opportunity Project itself. *Get Outdoors II*, 506 F.3d at 892 (permitting plaintiff only to challenge the provisions of a sign ordinance that caused it injury).

As for its own interests, Illinois Opportunity Project does not have a credible fear that the Executive Order will be enforced against it because the Executive Order's terms plainly do not apply to it. *Lopez*, 630 F.3d at 788 (a "claim[] of future harm lack[s] credibility when the challenged speech restriction by its terms is not applicable to the plaintiffs"). The Executive Order does not impose any obligation on the person or organization making the electioneering communication. Rather, it applies only to "entities submitting offers for state government contracts" of a certain minimum value. (Doc. 1-2 at § III.1.) Illinois Opportunity Project does not allege it intends to submit any such bids. Thus, there is no realistic danger the Executive Order will ever be enforced against it.

**B.  The claim that current or potential donors may wish to bid on substantial Montana state government contracts is too speculative to establish an actual or imminent injury.**

For the foregoing reasons, Illinois Opportunity Project's claim to standing, if any, must be predicated not on the chance the Executive Order will be enforced against it, but rather on the hypothetical application of the Executive Order to potential donors who may someday wish to bid for contracts with the State of

Montana.  Indeed, its stated "injury" is its assertion that it will self-chill its advocacy to avert any possibility that its current or potential donors will be subjected to the Executive Order's disclosure requirement.  (Doc. 1 ¶¶ 20-24.)  This, however, is not an actual or imminent injury.

A speculative claim of injury is the antithesis of an "actual or imminent" one.  *Lopez*, 630 F.3d at 786 ("the touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'" (quoting *Babbitt*, 442 U.S. at 298)).  There must be more than the possibility of injury; rather, there must be a "substantial risk" the harm will occur or a showing that the harm is "certainly impending."  *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015).  "'[S]ome day' intentions" are not enough.  *Lujan*, 504 U.S. at 564.  Standing cannot be premised on "a speculative chain of possibilities."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see also Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990).

A "speculative chain of possibilities" however, is exactly what Illinois Opportunity Project's theory of injury represents.  Illinois Opportunity Project does not allege it has received donations from any person or business who has either bid on a Montana state contract or has a present intention to do so in the future.  Indeed, the Complaint's text is telling:

> Illinois Opportunity Project receives support from a variety of sources, including from corporate entities.  These corporations *may* now or in

the future *wish* to bid on business from Montana state government. IOP also *desires* to solicit financial support from donors within Montana to partially offset the cost of its intended communications in Montana, and these *potential* donors who would be solicited would include corporations that *may* now or in the future bid on business with Montana state government.

(Doc. 1 ¶ 20 (emphasis added).) "May," "desires," and "potential" are the vocabulary of conjecture. Even accepting as true the stated intention to engage in electioneering communications in Montana, there is not even an arguable implication of Illinois Opportunity Project's interests unless the following occur: (1) there is an entity who has or wants to bid on a contract with the State of Montana worth at least $25,000 (for services) or $50,000 (for goods); (2) that entity has made or intends to make "covered expenditures" exceeding $2,500 within a two-year period; (3) that entity has made or intends to make contributions to Illinois Opportunity Project specifically; (4) that entity has made or intends to make those contributions either within two years of submitting their bid for a state contract or (for contracts longer than two years), while the contract is ongoing; and finally, (5) the entity has a sufficient realistic fear of negative repercussions that their intended contribution will be chilled. Each of these contingencies must occur before any injury even becomes possible. Illinois Opportunity Project's expressed concern of harm is thus neither actual nor imminent.

Indeed, the hypothetical nature of this theory of standing becomes more apparent when the limited nature of Illinois Opportunity Project's connection to

Montana is considered.  As its name implies, it is an Illinois-based organization that primarily engages in advocacy in Illinois on Illinois issues.  (Doc. 1 ¶¶ 6, 17.)  It only "occasionally" engages in issue advocacy in other states when the policies "might" affect policies in Illinois.  (*Id.* ¶ 6.)  It has provided no information about its donors and alleged no facts plausibly suggesting that an organization with such Illinois-centric activities would generally draw the attention or financial support of businesses located in Montana or who otherwise hold or seek substantial contracts with Montana state government.

In numerous instances courts have found similarly contingent claims of injury predicated on the behavior of third-party donors to be insufficiently concrete to confer standing.  In *ProtectMarriage.com – Yes on 8 v. Bowen*, 752 F.3d 827, 840 (9th Cir. 2014), for instance, the plaintiffs' "speculative fear that [their] donors may be personally harassed as a result of disclosing their contributions" was insufficient to confer standing in a First Amendment challenge to campaign finance disclosure requirements.  In *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018), the court rejected a candidate for local office's standing to challenge an aggregate limit on contributions from non-local donors, holding that whether the candidate would exceed the aggregate limit was speculative and would "depend[] in large part on the actions of third-party donors."  Likewise, in *National Taxpayers Union v. United States*, 68 F.3d 1428, 1433-34 (D.C. Cir. 1995), an

estate tax challenge, an allegation that an advocacy organization had standing because one of its members expressly stated the estate tax statute would "absolutely" affect his future donations was deemed insufficient for standing because the question whether and how much that member would give in the future was inherently speculative.

Much like these cases, Illinois Opportunity Project's claim rests heavily on speculation about how its current or hypothetical future donors may act. It has not provided any allegations that would demonstrate a realistic likelihood that *any* will be affected the Executive Order. This, combined with the narrow reach of the Executive Order and the limited connections between Illinois Opportunity Project and Montana, only make the future actions of its donors all the more speculative.[1]

Illinois Opportunity Project has not alleged an actual or imminent threat of harm from the Executive Order. Whether it even has any donors (potential or

---

[1] There is also a curious circularity to Illinois Opportunity Project's claim of injury. Illinois Opportunity Project's stated electioneering intentions in Montana are unique in that they are devoted entirely to an appeal to terminate the Executive Order itself. (Doc. 1 ¶ 18.) At the same time, it claims it will "not engage in its desired communications so long as Governor Bullock's Executive Order is law." (*Id.* ¶ 24.) If, however, Illinois Opportunity Project were successful in this action, there would be no enforceable Executive Order to oppose in the 2020 election. Thus, accepting its allegations as true, Illinois Opportunity Project has presented no scenario under which it will actually engage in the communications it says it wishes to make. This paradox only underscores the contrived and hypothetical nature of the case or controversy Illinois Opportunity Project purports to present.

otherwise) who will be impacted by the Executive Order is speculative.  Because

there is no injury in fact, Illinois Opportunity Project lacks Article III standing to

bring this case.

## II. Illinois Opportunity Project's claim is an attempt to enforce the rights of others who are better situated to litigate on their own behalf.

The Court should also dismiss this case because Illinois Opportunity

Project's claim is an attempt to enforce the rights of others.  Even where there is a

personal stake sufficient to establish a case or controversy under the Constitution,

the courts have imposed additional prudential limits on standing that "restrict the

grounds a plaintiff may put forward in seeking to vindicate his personal stake."

*Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006).  These

prudential limitations include the rule that "a litigant must normally assert his own

legal interests rather than those of third parties."  *Id.* (quoting *Phillips Petroleum

Co. v. Shutts*, 472 U.S. 797, 804 (1985)).  A plaintiff may only assert the rights of

others if it first establishes both that (1) "the party asserting the right has a 'close'

relationship with the party possessing the right"; and (2) "there is a 'hindrance' to

the possessor's ability to protect his own interests."  *Kowalski v. Tesmer*, 543 U.S.

125, 130 (2004).  Even in the more forgiving arena of overbreadth cases, third

party standing is recognized only where "the court is convinced that the party

whose rights are most clearly implicated may not be in a position to assert those

rights effectively."  *United States v. Holm*, 326 F.3d 872, 875 (7th Cir. 2003).

Even assuming Illinois Opportunity Project has a sufficient stake in the outcome of this case, it is enforcing the rights of its putative donors, not its own. And it has not justified an exception to the rule against third party standing. It has not alleged facts that plausibly establish a sufficiently "close" relationship to any prospective state contractors whose rights it seeks to enforce. Nor has it established any hindrance that would prevent those businesses from bringing this action on their own behalf. Accordingly, Illinois Opportunity Project lacks standing.

### A. Illinois Opportunity Project lacks the same intensity of motivation to challenge the Executive Order as would a prospective state contractor.

Illinois Opportunity Project has not alleged a sufficiently "close" relationship between it and any current or future donors, let alone donors affected by the Montana statute, to establish an exception to the third-party standing rule. To have a "close relationship," the interests of the litigant must not only coincide with the third party, but be "equally as intense." *See Wauchope v. United States Dep't of State*, 985 F.2d 1407, 1411 (9th Cir. 1993); *Washington v. Fresno County Sheriff*, 1:15-cv-00854-LJO-GSA, 2015 U.S. Dist. LEXIS 82181, at *5 (E.D. Cal. June 24, 2015). The litigant must be "fully, or very nearly, as effective a proponent of the right as" the third party. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002). Moreover, there must be a *current* close

relationship. *Id.* (former nightclub owners lacked a close relationship with their former patrons); *Kowalski*, 543 U.S. at 131 (attorneys lacked a close relationship with hypothetical future clients). Typical of such relationships are doctor-patient, attorney-client, or prison chaplain-inmate. *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 879 (9th Cir. 2010).

Illinois Opportunity Project and any hypothetical donors subject to the Executive Order presumably share a common interest in its invalidation. Nevertheless, those interests lack the same intensity and motivation to justify third party standing. The personal stake of a company who does substantial business with the State of Montana greatly exceeds the stake of an out-of-state organization that (1) primarily conducts activities in an entirely different region of the United States, (2) is not directly regulated by the Executive Order, and (3) is highly unlikely to rely more than incidentally on donations from a company contracting with the State of Montana. That the Complaint focuses its energies not on decrying the purported injuries to Illinois Opportunity Project but rather those of its donors (*see, e.g.,* Doc. 1 ¶¶ 20-22) only emphasizes this point. The mere potential that some fraction of its donors could be affected by the Executive Order does not give Illinois Opportunity the alignment in interests and motivation necessary to permit third-party standing.

**B.    There is no hindrance preventing prospective state contractors desiring to make political contributions from bringing their own action.**

Illinois Opportunity Project must also establish that its contributors would face a "hindrance" in the enforcement of their rights.  There is no such hindrance: any business capable of obtaining a $25,000+ contract with the State of Montana while also making $2,500+ contributions to organizations seeking to influence Montana elections is also capable of mounting its own challenge to the executive order.  There is likewise no obvious reason why such a business would have to disclose *to whom* it wishes to contribute to bring that suit.  Thus, this case does not present a situation like *NAACP v. Alabama*, 357 U.S. 449, 459 (1958), where the third parties (individual members of the NAACP) could not litigate their own rights without sacrificing the very interest (anonymity of their membership in the NAACP) they wished to protect.

The litigants best situated to litigate the claims advanced by Illinois Opportunity Project are the businesses to whom the Executive Order applies.  Thus, prudential standing principles dictate the Court should not permit a more remote litigant to assert their claimed rights for them.

## CONCLUSION

Illinois Opportunity Project plainly lacks standing.  For this reason, this case should be dismissed.

DATED this 23rd day of October, 2019.

AGENCY LEGAL SERVICES BUREAU
P.O. Box 201440
Helena, MT 59620-1440


By: */s/ Christopher D. Abbott*
    CHRISTOPHER D. ABBOTT
    Assistant Attorney General

    Attorney for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 4,168 words, excluding the caption, certificates of service and compliance, and if required, any tables of contents and authorities, and exhibit index.

By: */s/ Christopher D. Abbott*
CHRISTOPHER D. ABBOTT
Assistant Attorney General