IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ILLINOIS OPPORTUNITY PROJECT,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>STEVE BULLOCK, in his official capacity as governor of Montana, and MEGHAN HOLMLUND, in her official capacity as chief of the State Procurement Bureau,<br><br>　　　　　　　　　Defendants. | CV-19-56-H-CCL<br><br><br>Opinion & Order |

Plaintiff Illinois Opportunity Project (Illinois Opportunity) moves for summary judgment and asks the Court for an order declaring that Governor Bullock's Executive Order 15-2018 (Executive Order) violates the rights of members and supporters of all issue-advocacy organizations to freedom of speech and association under the First and Fourteenth Amendments. Illinois Opportunity also seeks an order permanently enjoining the State of Montana (the State) from enforcing and implementing the Executive Order.[1] (Doc. 52).

---

[1] The named defendants in this case are officials of the State of Montana (Governor Bullock and the Chief of the State Procurement Bureau) named in their official capacity. The Court will therefore refer to defendants in the singular as the State.

The State likewise moves for summary judgment, arguing that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. (Doc. 57). The State argues that Illinois Opportunity lacks standing to bring the case. The State argues in the alternative that the Executive Order is constitutional on its face and that Illinois Opportunity has provided no evidence to sustain an as-applied challenge to the Executive Order on either its own behalf or on behalf of its members and supporters.

The Court heard oral argument on both motions on August 27, 2020. Daniel R. Suhr of the Liberty Justice Center argued for Illinois Opportunity. He was accompanied by local counsel, Anita Milanovich. Christopher Abbott, Assistant Attorney General for the State of Montana, argued for the State. He was accompanied by Raphael J.C. Graybill, Governor's Bullock's Chief Legal Counsel.

## PROCEDURAL BACKGROUND

Illinois Opportunity filed its initial complaint on August 27, 2019. The State moved to dismiss on October 23, 2019. The motion was fully briefed as of December 11, 2019, when the State filed its reply brief.

Illinois Opportunity filed its first summary judgment motion on December 13, 2019, focusing on the merits of its First Amendment challenge to the

Executive Order, which requires any corporation desiring to bid on state contracts in Montana worth more than $25,000 for services or $50,000 for goods to disclose any donations made to organizations like Illinois Opportunity that engage in issue advocacy.  Illinois Opportunity filed a single declaration in support of its summary judgment motion.  (*See* Doc. 30).

The Court granted the State's motion to dismiss on January 2, 2020, holding that the initial complaint failed to allege facts sufficient to show that Illinois Opportunity or its members had suffered or will likely suffer an injury in fact that could be traced to the Executive Order.  Although the State requested dismissal with prejudice, the Court allowed Illinois Opportunity leave to file an amended complaint.  In its order, the Court denied Illinois Opportunity's summary judgment motion, with leave to refile, once Illinois Opportunity had filed an amended complaint adequately addressing the defects noted in the order.  (*See* Doc. 36).

Illinois Opportunity filed its amended complaint on January 21, 2020, and the State filed its answer on Feb. 4, 2020.  Illinois Opportunity added a number of allegations to its amended complaint in an effort to address the standing issue – particularly ¶¶ 20 through 29.  (*See* Doc. 37).  The State denied each of those allegations in its answer, which was filed on February 4, 2020.  (*See* Doc. 38).

/ / /

Illinois Opportunity filed its currently pending motion for summary judgment on April 17, 2020. On May 7, 2020, the Court established a briefing schedule in anticipation of the State's plan to file its own summary judgment motion. Both motions were fully briefed as of July 17, 2020, and the Court set the August 27, 2020, hearing in an order filed on July 15, 2020.

Having reviewed the entire record, including the *amici* brief filed in May, and received argument, the Court is prepared to rule.

## LEGAL STANDARD – SUMMARY JUDGMENT

The party moving for summary judgment must inform the court of the basis for the motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case in which the nonmoving party bears the burden of proof as to the issue on which the motion is made, the moving party can meet its burden by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once this initial burden is met, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In deciding summary judgment, the Court "must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

Page 4 of 14

The fact that each party has moved for summary judgment "does not necessarily mean that the material facts are, indeed, undisputed." *E.Piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F.Supp.2d 1244, 1251 (N.D. Cal. 2008). A court faced with simultaneous cross-motions for summary judgment must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Housing Council of Riverside County v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

In its order setting the briefing schedule, the Court reminded the parties that L.R. 56.1(c) allows them to jointly file a statement of stipulated facts if they agree there are no material disputed facts and the issues can be decided as a matter of law. The parties chose not to file such a statement, possibly because Illinois Opportunity had already filed its statement of undisputed facts when the Court issued the briefing schedule.

The Court notes that the State chose not to dispute many of the facts asserted in Illinois Opportunity's statement of undisputed facts, for purposes of Illinois Opportunity's motion for summary judgment. The State disputes the statement made at ¶ 7 of Illinois Opportunity's Statement of Undisputed Facts on the grounds that it is a legal conclusion and not adequately supported by pinpoint

citations. (Doc. 59 at ¶ 7). The State disputes the paragraphs of Illinois Opportunity's Statement of Undisputed Facts that cite to media articles on the grounds that they are not relevant and cannot be established by evidence admissible at trial. (*See* Doc. 59 at ¶¶ 9 - 10).

It appears to the Court that the State partially disputes most of the paragraphs in Illinois Opportunity's Statement of Undisputed Facts that address the standing issue on the grounds that those statements are supported by the Besler declaration, which the State argues is speculative, lacks foundation, and is not based on personal knowledge. (*See* Doc. 59 at ¶¶ 17, 20, 21, 22, 23, 26 and 27).[2]

Illinois Opportunity followed the same procedure, choosing not to dispute most of the paragraphs of the State's Statement of Undisputed Facts for purposes of the pending motions[3] and disputing only the State's characterization of the Executive Order. (*See e.g.* Doc. 66 at ¶¶ 7, 11, 14 ).

_____

[2] Matthew Besler is the president and chief executive officer of Illinois Opportunity Project. His declaration was filed on December 13, 2019, in support of Illinois Opportunity's first motion for summary judgment. Although the declaration did not specifically address the standing issue raised by the State's motion to dismiss, Illinois Opportunity now uses the declaration to respond to the State's argument that it lacks standing.

[3] Illinois Opportunity notes that it lacks knowledge as to the assertions made in a number of paragraphs of the State's Statement of Undisputed Facts. (*See* Doc. 66 at ¶¶ 32, 34 - 37). Having chosen to file for summary judgment before engaging in any discovery, Illinois Opportunity cannot complain about its lack of knowledge regarding factual assertions, particularly when those assertions are properly supported by the declaration of Ms. Holmlund.

Page 6 of 14

## FACTUAL BACKGROUND

Governor Bullock issued the Executive Order on June 8, 2018. The Executive Order's definition of "electioneering communications" tracks the language of Mont. Code Ann. § 13-1-101(16), but includes express advocacy, which is not found in the statutory definition. The Montana State Legislature added this definition to Mont. Code Ann. § 13-1-101 in 2015 as part of S.B. 289, "with the purpose of 'increasing transparency, informing Montanans about who is behind the messages vying for their attention, and decreasing circumvention' of campaign finance laws." *See National Ass'n for Gun Rights*, 933 F.3d 1102, 1108 (9th Cir. 2019).

Illinois Opportunity is a social-welfare organization based in Chicago and intends to mail thousands of Montana voters mailers in advance of Montana's 2020 general election. It plans to include names and pictures of candidates for governor, urging those candidates not to continue the Executive Order once elected. Illinois Opportunity intends to comply with the disclosure requirements of the Montana disclosure statute before sending these mailers. Although Illinois Opportunity is not required to disclose its donors; the donors themselves are free to disclose their donations.

/ / /

Page 7 of 14

## DISCUSSION  – STANDING

The Court warned Illinois Opportunity when it granted the State's motion to

dismiss that the Court could not proceed to the merits of its case unless Illinois

Opportunity could overcome the standing issue raised by the State.

The State appears to concede for purposes of its own summary judgment

motion that Illinois Opportunity has satisfied the Article III standing requirements.

The State focuses its own standing argument on "additional prudential standing

limitations" requiring a plaintiff to assert its own rights, rather than the rights of

third parties.  The State contends that Illinois Opportunity's relationship with its

past and prospective donors is not sufficiently close to allow it to represent those

donors and that the donors can protect their own interests.  (*See* Doc. 58 at 11).

### Direct Standing

The State's concession that Illinois Opportunity has established the bare

minimum of Article III standing for purposes of the State's summary judgment

motion does not relieve the Court of its "independent obligation to assure that

standing exists." *Summers v. Earth Island Institute*, 455 U.S. 488 499 (2009).

As the party invoking federal court jurisdiction, Illinois Opportunity bears the

burden of proving that it has standing at every stage of the proceedings.  Because

Illinois Opportunity is seeking injunctive relief, it must establish that the executive

Page 8 of  14

order either has caused or will cause it to suffer an actual or imminent (as opposed to conjectural or hypothetical) and concrete and particularized invasion of a legally protected right and that the relief it seeks will redress its injury.  See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

After the Court dismissed Illinois Opportunity's initial complaint with leave to amend, Illinois Opportunity added a number of allegations to its amended complaint in an effort to address the standing issue.  (*See* Doc. 37 at ¶¶ 20 - 29). During oral argument, counsel for Illinois Opportunity referenced an allegation of the amended complaint concerning a multi-state corporation that has donated to Illinois Opportunity in the past, has operations in Montana, and has contracts with the State and argued that the State had not disputed that assertion.[4]  The Court has reviewed the amended complaint and determined that counsel was referring to paragraph 22.  The State did not admit the truth of the allegation made in paragraph 22, instead denying it, based on lack of sufficient information.  (Doc. 38 at ¶ 22).  Indeed, that was the State's response to almost all of the allegations in Illinois Opportunity's amended complaint designed to address the standing issue. (*See* Doc. 38 at ¶¶ 20 - 29).

---

[4] Having assured the parties that it will get out an opinion as soon as possible, the Court is relying on its own notes from the hearing rather than waiting for a verbatim transcript.

Illinois Opportunity attempts to support its standing argument by referencing the declaration of Matthew Besler, its president and chief executive officer.   As noted above, the State argues that Illinois Opportunity cannot rely on the Besler declaration because it is speculative, lacks foundation, and is not based on personal knowledge.  The Court agrees.  Mr. Besler's speculation that the existence of the executive order will cause past and potential donors not to donate to Illinois Opportunity is not sufficient to establish that the executive order either has caused or will cause it to suffer an actual or imminent (as opposed to conjectural or hypothetical) and concrete and particularized invasion of its legally protected right to associate with those donors.[5]

## **Third Party Standing**

"Under the doctrine of 'associational' or 'representational' standing an organization may bring suit on behalf of its members whether or not the organization itself has suffered injury from the challenged action." *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006).  To establish associational standing, Illinois Opportunity must first establish that it has

---

[5] Counsel's comment during oral argument that the Executive Order invades its right to privacy because its name will appear on the State's website if its donors choose to bid on state contracts rings hollow, given counsel's statement that Illinois Opportunity is willing to forego its own privacy and advertise its plan to send out political flyers in Montana in order to raise funds.

"members" in the sense required by the doctrine of associational or representational standing. *Id.* at 1106.

Illinois Opportunity cites *Buckley v. Valeo* to support its argument that this Court should not distinguish between members and contributors in deciding whether its contributors can be treated as members for associational standing purposes. The various individuals named as plaintiffs/appellants in the cases consolidated for appeal to the Supreme Court in *Buckley* were challenging the "key provisions of the Federal Election Campaign Act (the Act) of 1971" and "related provisions of the Internal Revenue Code." 424 U.S. 1, 6 (1976). Although the Supreme Court addressed the "case and controversy" requirement under Article III before considering the merits of the appeal, it did not discuss associational standing. The sentence cited by Illinois Opportunity does not address associational standing but whether the disclosure requirement of the Act "differs significantly from those at issue in *NAACP v. Alabama* and its progeny because the Act only requires disclosure of the names of contributors and does not compel political organizations to submit the names of their members." *Id.* at 65. Illinois Opportunity's reliance on this statement does not support its argument that it need not establish that it has members before it can argue that it is entitled to represent those members.

An association can assert the constitutional rights of its members, so long as "its nexus with them is sufficient to permit that it act as their representative." *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 458 (1958). To determine whether a sufficient nexus exists between Illinois Opportunity and its members, the Court must consider whether "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

The Court cannot determine whether Illinois Opportunity meets the test for associational standing because Illinois Opportunity refuses to identify the past or prospective donors that it claims to represent in this case. The Court acknowledged in its order dismissing Illinois Opportunity's initial complaint that Illinois Opportunity could have donors reluctant to assert their own privacy interest because doing so might cause them to give up that very interest by revealing they want to donate to Illinois Opportunity. The Court indicated that it would be willing to entertain a motion for a protective order on behalf of those past or prospective donors.

/ / /

Rather than moving for a protective order, Illinois Opportunity made another motion for summary judgment, relying on the same declaration it relied on to support its first summary judgment motion, which was filed before it amended its complaint. At the very least, Illinois Opportunity could have submitted a declaration supporting its factual contentions regarding its past donor and potential future donor without identifying the specific donor. Illinois Opportunity's reliance on a declaration prepared before amending the complaint raises an issue as to whether Illinois Opportunity made any effort to confirm its speculation as to whether the past or potential donors referenced in its amended complaint would refuse to donate to Illinois Opportunity while the Executive Order remains in place.

**CONCLUSION & ORDER**

Having considered the entire record before it, the Court has determined that Illinois Opportunity does not have standing to bring its claim for declaratory and injunctive relief. Accordingly,

**IT IS HEREBY ORDERED** that Illinois Opportunity's motion for summary judgment (Doc. 52) is **DENIED.**

**IT IS FURTHER ORDERED** that the State's motion for summary judgment (Doc. 57) is **GRANTED.**

Page 13 of 14

The Clerk of Court is directed to enter judgment in accordance with this order, entering judgment for the defendants based on the Court's lack of subject matter jurisdiction.

Dated this 31st day of August, 2020.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE